**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION**

| | | |
|---|---|---|
| **ANTHONY SMALLWOOD,** )<br>    Plaintiff, )<br> )<br>v. )<br> )<br> )<br> )<br>**MICHAEL J. ASTRUE,** )<br> **Commissioner of Social Security,** )<br>    Defendant. ) | Civil Action No. 2:09cv00070<br>**REPORT AND<br>RECOMMENDATION**<br><br>By:   PAMELA MEADE SARGENT<br>UNITED STATES MAGISTRATE JUDGE | |

*I. Background and Standard of Review*

Plaintiff, Anthony Smallwood, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003 & Supp. 2010). This court has jurisdiction pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Smallwood protectively filed his application for SSI on December 13, 2001, alleging disability as of March 1, 2001, based on residual right arm and hand problems arising from a 1987 injury, back problems, anxiety and depression. (Record, ("R."), at 46-50, 56, 81.) The claim was denied initially and upon reconsideration. (R. at 28-30, 34, 35-36.) Smallwood then requested a hearing before an administrative law judge, ("ALJ"). (R. at 37.) The ALJ held a hearing on October 17, 2002, at which Smallwood was represented by counsel. (R. at 211-39.) By decision dated November 27, 2002, the ALJ denied Smallwood's claim. (R. at 15-22.) The Appeals Council denied Smallwood's request for review on September 26, 2003. (R. at 5-8.) Smallwood filed an action with this court seeking review of the ALJ's unfavorable decision. *See Smallwood v. Barnhart*, Civil Action No. 7:03cv00749. On October 19, 2004, this court vacated the Commissioner's November 27, 2002, decision and remanded the case to the Commissioner for further proceedings. (R. at 410-19.) The case was remanded to an ALJ for further proceedings consistent with the court's order. (R. at 420-22.) Upon remand, a hearing was held on November 14, 2006, at which Smallwood was represented by counsel. (R. at 549-69.)

By decision dated January 24, 2007, the ALJ denied Smallwood's claim. (R. at 370-91.) The ALJ found that Smallwood had not engaged in any substantial gainful

activity since December 1, 2001. (R. at 390.) The ALJ found that the medical evidence established that Smallwood had severe impairments, namely right hand and arm injury, back strain, personality disorder, not otherwise specified, depression, anxiety and borderline intellectual functioning, but he found that Smallwood's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 374, 390.) The ALJ also found that Smallwood had the residual functional capacity to perform a limited range of light[1] work that allowed minimal use of his right hand for fine manipulation. (R. at 390-91.) The ALJ further found that Smallwood was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to interact appropriately with the general public, to ask simple questions or request assistance, to accept instruction, to respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. at 390-91.) The ALJ found that Smallwood could not perform his past relevant work. (R. at 391.) Based on Smallwood's age, education, work experience and residual functional capacity and the testimony of a vocational expert,[2] the ALJ found that jobs

---

[1]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If an individual can do light work, he also can do sedentary work. *See* 20 C.F.R. § 416.967(b) (2010).

[2]The ALJ referred to the vocational expert's testimony from Smallwood's first hearing in making his finding that other jobs existed that Smallwood could perform. (R. at 389.)

existed in significant numbers in the national economy that Smallwood could perform, including light jobs as a watch guard, a parking lot attendant, a house sitter and a companion sitter. (R. at 236, 389, 391.) Thus, the ALJ found that Smallwood was not under a disability as defined under the Act and was not eligible for benefits. (R. at 391.) *See* 20 C.F.R. § 416.920(g) (2010).

After the ALJ issued his decision, Smallwood pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 240-43, 365.) Smallwood then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2010). The case is before this court on Smallwood's motion for summary judgment filed April 7, 2010, and the Commissioner's motion for summary judgment filed May 5, 2010.

## II. Facts[3]

Smallwood was born in 1969, (R. at 47), which classifies him as a "younger person" under 20 C.F.R. § 416.963(c). He has a tenth-grade education and vocational training in masonry and agriculture. (R. at 62.) Smallwood has past relevant work as a construction laborer. (R. at 57, 65.) At his November 14, 2006, hearing, Smallwood testified that he was not taking any prescription medication due to his financial situation. (R. at 558.) He stated that he was not eligible for assistance because he was a convicted felon. (R. at 558.)

---

[3]Since Smallwood does not contest the ALJ's findings with regard to his physical residual functional capacity, the undersigned will address only the evidence relating to his mental allegations.

John Newman, a vocational expert, also was present and testified at Smallwood's hearing. (R. at 564-68.) Newman was asked to consider a hypothetical individual of Smallwood's age, education and work experience, who had a seriously limited, but not precluded, ability to deal with the public, to interact with supervisors, to understand, remember and carry out complex instructions, to maintain personal appearance, to behave in an emotionally stable manner and to relate predictably in social situations and who had no ability to deal with work stresses and to demonstrate reliability. (R. at 567.) Newman stated that these limitations would preclude all work. (R. at 567.) Newman was asked to consider an individual who had a seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors and to maintain personal appearance and who had no ability to deal with work stresses, to function independently, to maintain attention and concentration, to understand, remember and carry out complex instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 568.) Newman stated that there would be no jobs available that such an individual could perform. (R. at 568.)

In rendering his decision, the ALJ reviewed records from Grayson County Schools and Town of Fries Schools; Twin County Community Hospital; Wake Forest University Baptist Medical Center; Dr. Donald R. Williams, M.D., a state agency physician; Dr. F. Joseph Duckwall, M.D., a state agency physician; Grayson Highlands Family Medicine & Obstetrics; Joseph Leizer, Ph.D., a state agency psychologist; Mount Rogers Community Services Board; Michael Kleinot, Ph.D., a

licensed clinical psychologist; Hugh Tenison, Ph.D., a state agency psychologist; Dr. Paul Morin, M.D.; Teresa E. Jarrell, M.A., a licensed psychologist; Galax Mental Health Clinic; Sharon J. Hughson, Ph.D., a licensed psychologist; Robert S. Hirsch, Psy.D., a resident in psychology; and Robert W. Smith, Ph.D., a licensed clinical psychologist. Smallwood's attorney submitted additional medical records from Hughson and Galax Mental Health Clinic to the Appeals Council.[4]

On December 20, 2001, Smallwood was seen by Patsy O. McKnight, F.N.P., a family nurse practitioner, at Grayson Highlands Family Medicine. (R. at 118.) Smallwood reported that he used marijuana on a daily basis to control his nerves. (R. at 118.) Smallwood reported that he was being seen on the advice of his parole officer, who recommended treatment for his marijuana abuse or risk imprisonment. (R. at 118.) McKnight reported that Smallwood was anxious, harsh appearing and his hands had a slight tremor. (R. at 118.) She diagnosed substance abuse and anxiety and recommended counseling. (R. at 118.) On February 4, 2002, Smallwood reported that he smoked 10 to 12 joints a day, but that he had been off marijuana since December 20, 2001. (R. at 117.) However, a drug test administered on February 1, 2002, was positive for marijuana. (R. at 117.)

On February 5, 2002, Joseph Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Smallwood suffered from a nonsevere affective disorder and anxiety-related disorder.

---

[4]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-8), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

(R. at 124-38.) Leizer found that Smallwood had no limitations due to psychiatric factors and that he had not experienced any episodes of decompensation. (R. at 134, 138.)

On March 18, 2002, Smallwood was seen at Mount Rogers Community Services Board for complaints of unstable mood, depression and irritability. (R. at 139-41.) Group therapy was recommended. (R. at 141.)

On May 14, 2002, Michael Kleinot, Ph.D., a licensed clinical psychologist, evaluated Smallwood at the request of Disability Determination Services. (R. at 142-46.) Kleinot diagnosed personality disorder, not otherwise specified, with borderline and possibly antisocial features, and dysthymic disorder versus adjustment disorder. (R. at 146.)

Kleinot completed a mental assessment indicating that Smallwood had a more than satisfactory ability to follow work rules, to function independently, to maintain attention/concentration, to understand, remember and carry out simple instructions, to maintain personal appearance, to relate predictably in social situations and to demonstrate reliability. (R. at 147-48.) He reported that Smallwood had a more than satisfactory to a satisfactory ability to understand, remember and carry out detailed instructions. (R. at 147-48.) Kleinot reported that Smallwood had a satisfactory ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses and to behave in an emotionally stable manner. (R. at 147-48.) He reported that Smallwood had a satisfactory to seriously limited, but not precluded, ability to understand, remember and carry out complex instructions. (R.

at 147-48.)

On May 28, 2002, Smallwood was seen at Galax Mental Health Clinic with complaints of irritability, lethargy, excessive temperamental reactions and social withdrawal. (R. at 208-10.) He reported that his symptoms had worsened since he stopped smoking marijuana in December 2001. (R. at 208.) Dr. James P. Robinson, M.D., diagnosed Smallwood with a pain disorder, minor depression resulting from the pain disorder with insomnia and irritability and continuous marijuana use since the age of 13, in remission. (R. at 209.) Smallwood's then-current Global Assessment of Functioning score, ("GAF"),[5] was assessed at 80.[6] (R. at 209.) On June 25, 2002, Dr. Robinson assessed Smallwood's then-current GAF score at 70.[7] (R. at 189.) On August 6, 2002, Smallwood denied symptoms of depression and anxiety. (R. at 202-03.) Dr. Bobby Miglani, M.D., reported that Smallwood was alert and oriented. (R. at 203.) Smallwood's concentration and attention were intact, and his memory was normal for immediate, recent and remote recall. (R. at 203.) Smallwood denied suicidal and homicidal ideations. (R. at 203.) Dr. Miglani diagnosed history of alcohol and marijuana dependence, in remission by report, polysubstance abuse in the past, in remission by report, and anxiety disorder, not otherwise specified, versus anxiety

---

[5]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6]A GAF score of 71-80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors ...; no more than slight impairment in social, occupational, or school functioning...." DSM-IV at 32.

[7]A GAF score of 61-70 indicates that the individual has "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... , but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 32.

secondary to polysubstance misuse and antisocial personality traits. (R. at 203-04.) Dr. Miglani assessed a then-current GAF score of 50.[8] (R. at 204.)

On June 26, 2002, Hugh Tenison, Ph.D., a state agency psychologist, completed a mental assessment indicating that Smallwood was moderately limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to work in coordination with or proximity to others without being distracted by them, to complete a normal workday and workweek without interruptions from psychologically based symptoms, to interact appropriately with the general public, to ask simple questions or request assistance, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (R. at 149-52.) Tenison found that Smallwood was not significantly limited in the remaining categories. (R. at 149-50.)

Tenison also completed a PRTF indicating that Smallwood suffered from an affective disorder and a personality disorder. (R. at 153-67.) He found that Smallwood was mildly restricted in his activities of daily living and in maintaining concentration, persistence or pace and that he was moderately limited in his ability to maintain social functioning. (R. at 163.) He found that Smallwood had not experienced any episodes of decompensation. (R. at 163.)

---

[8]A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning ...." DSM-IV at 32.

On October 28, 2002, Sharon J. Hughson, Ph.D., a licensed psychologist, evaluated Smallwood at the request of Smallwood's attorney. (R. at 196-99.) Smallwood reported that he had applied for disability because of right-arm problems and nerve problems. (R. at 196.) Smallwood reported a history of alcohol and drug abuse. (R. at 196.) Hughson diagnosed pain disorder associated with both psychological factors and a general medical condition, bipolar I disorder, polysubstance dependence in full sustained remission by report and rule out an antisocial personality disorder. (R. at 199.)

Hughson completed a mental assessment indicating that Smallwood had an unlimited ability to understand, remember and carry out simple instructions. (R. at 200-01.) She reported that Smallwood had a limited, but satisfactory, ability to follow work rules, to relate to co-workers, to use judgment, to function independently, to maintain attention and concentration and to understand, remember and carry out detailed instructions. (R. at 200-01.) Hughson reported that Smallwood had a seriously limited, but not precluded, ability to deal with the public, to interact with supervisors, to understand, remember and carry out complex instructions, to maintain personal appearance, to behave in an emotionally stable manner and to relate predictably in social situations. (R. at 200-01.) She also reported that Smallwood had no useful ability to deal with work stresses and to demonstrate reliability. (R. at 200-01.)

On October 6, 2005, Smallwood was seen at Twin County Regional Hospital with complaints of depression, anxiety and suicidal thoughts. (R. at 512-18.) It was reported that a Grayson County deputy transported Smallwood to the emergency

room. (R. at 516.) Smallwood was tearful stating that he "needs something for nerves." (R. at 516.) He stated that his wife recently left him, and he was not sleeping well. (R. at 516.) His affect was anxious and depressed. (R. at 516.) He was diagnosed with depression. (R. at 515.) On October 13, 2005, Smallwood was seen at the emergency room with complaints of chest pain. (R. at 519-30.) He was very anxious and tearful, stating that his wife had left him. (R. at 523.) A chest x-ray was normal. (R. at 528.) Smallwood was diagnosed with nonspecific chest pain and anxiety. (R. at 522.)

On May 12, 2006, Smallwood was evaluated by Robert S. Hirsch, Psy.D., a resident in psychology, and Robert W. Smith, Ph.D., a licensed clinical psychologist, at the request of Disability Determination Services. (R. at 436-39.) Smallwood reported that he got along fine with others. (R. at 438.) Hirsch and Smith reported that Smallwood's thoughts were organized, coherent and logical. (R. at 438.) There was no overt evidence of psychosis, and Smallwood denied visual and auditory hallucinations. (R. at 438.) Smallwood's recent, remote and long term memory was generally intact. (R. at 438.) His abstraction skills were operationally intact, as were his motor, concentration and processing skills. (R. at 438.) His judgment appeared grossly intact. (R. at 438.) Hirsch and Smith diagnosed cannabis dependence, by history, and they assessed a then-current GAF score of 65. (R. at 439.) Hirsch and Smith noted that any symptoms associated with depression or anxiety were likely the result of drug use, and likely exacerbated by reported alcohol and cocaine abuse. (R. at 439.) They also noted that Smallwood's behaviors, i.e., his extensive legal background, appeared to warrant mention of antisocial personality traits. (R. at 439.)

Hirsch and Smith completed a mental assessment indicating that Smallwood had a mild limitation in his ability to interact appropriately with the public, with supervisors and with co-workers. (R. at 440-42.) No other limitations were noted. (R. at 440-41.)

On October 31, 2006, Teresa E. Jarrell, M.A., a licensed psychologist, evaluated Smallwood at the request of Smallwood's attorney. (R. at 534-45.) Jarrell reported that Smallwood had a moderately anxious and depressed mood. (R. at 537.) Smallwood was tearful on at least two occasions during the interview. (R. at 537.) Smallwood reported that he experienced panic attacks and was depressed. (R. at 538-39.) Smallwood reported difficulty maintaining concentration. (R. at 538.) He reported that he was shot at recently by another individual, and since that time, he had exhibited symptoms characteristic of post-traumatic stress disorder. (R. at 539.) The Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test was administered, and Smallwood obtained a verbal IQ score of 80, a performance IQ score of 70 and a full-scale IQ score of 74. (R. at 539-40.) In addition to the WAIS-III, Jarrell administered the Wide Range Achievement Test, Third Revision, ("WRAT-3"), and the Millon Clinical Multiaxial Inventory-III, ("MCMI-III"). (R. at 537, 540-43.)

Jarrell reported that Smallwood's immediate memory was within normal limits, his recent memory was mildly deficient, and his remote memory was moderately deficient. (R. at 538.) Smallwood's insight was moderately deficient, and his judgment was mildly deficient. (R. at 538.) His capacity for concentration was within normal limits. (R. at 538.) Jarrell reported that the results of the evaluation were considered reliable and valid. (R. at 539.) Jarrell diagnosed bipolar II disorder, most recent

episode depressed, severe without psychotic features; generalized anxiety disorder; panic disorder without agoraphobia; post-traumatic stress disorder; learning disorder, not otherwise specified; borderline intellectual functioning; and personality disorder, not otherwise specified. (R. at 543-44.) Jarrell assessed Smallwood's then-current GAF score at 50. (R. at 544.) Jarrell recommended outpatient psychiatric treatment and pharmacological intervention due to Smallwood's suicidal thoughts and evidence of a severe level of depression and anxiety. (R. at 545.)

Jarrell completed a mental assessment indicating that Smallwood had a seriously limited, but not precluded, ability to follow work rules, to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to understand, remember and carry out simple instructions and to maintain personal appearance. (R. at 546-48.) She indicated that Smallwood had no useful ability to deal with work stresses, to function independently, to maintain attention and concentration, to understand, remember and carry out complex and detailed instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 546-47.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2010); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed

impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in the process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2010).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2010); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated January 24, 2007, the ALJ denied Smallwood's claim. (R. at 370-91.) The ALJ found that the medical evidence established that Smallwood had severe impairments, namely right hand and arm injury, back strain, personality disorder, not otherwise specified, depression, anxiety and borderline intellectual functioning, but he found that Smallwood's impairments did not meet or medically equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 374, 390.) The ALJ also found that Smallwood had the residual functional capacity to perform a limited range of light work. (R. at 390-91.) The ALJ found that Smallwood could not perform his past relevant work. (R. at 391.) Based on Smallwood's age, education, work experience and residual functional capacity and the

testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Smallwood could perform, including light jobs as a watch guard, a parking lot attendant, a house sitter and a companion sitter. (R. at 236, 389, 391.) Thus, the ALJ found that Smallwood was not under a disability as defined under the Act and was not eligible for benefits. (R. at 391.) *See* 20 C.F.R. § 416.920(g).

Smallwood argues that the ALJ's determination of his mental residual functional capacity is not supported by substantial evidence. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 9-14.) Smallwood does not challenge the ALJ's finding with regard to the effects of his remaining alleged impairments on his residual functional capacity. Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding as to Smallwood's mental residual functional capacity.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays,* 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(d), if he sufficiently explains his rationale and if the record supports his findings.

The ALJ gave greater weight to the opinions of Kleinot, Dr. Smith and state agency psychologist Tenison. (R. at 388.) The ALJ also accepted the testimony of the vocational expert from Smallwood's first hearing in finding that jobs existed in significant numbers that Smallwood could perform with these limitations. (R. at 234, 236, 389.) The vocational expert was asked to consider "Exhibit 10F"[9] as it related to mental restrictions, which indicated that Smallwood was moderately limited in several areas, suggesting that Smallwood would need a structured type of work setting. (R. at 234.) Smallwood argues that the ALJ should have given greater weight to the opinions of psychologists Jarrell and Hughson in making his mental residual functional capacity finding. Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding with regard to Smallwood's mental residual functional capacity. In particular, I find that the ALJ's finding is supported by the opinions of psychologist Kleinot, state agency psychologists Leizer and Tenison, Dr. Robinson and psychologists Hirsch and Smith.

---

[9]Exhibit 10F is a mental assessment completed by Tenison on June 26, 2002. (R. at 149-51.)

The ALJ found that Smallwood's treatment and medication history did not support his contention that he had been mentally unable to work since March 2001. (R. at 387.) The ALJ noted that Smallwood had not required counseling, other than therapy related to substance abuse. (R. at 141, 144, 197, 386, 536, 558.) Smallwood reported that Xanax helped him. (R. at 208.) Smallwood testified that he had not taken any medication during the six-month period prior to his second hearing due to his financial situation. (R. at 386, 557-58.)

On February 5, 2002, state agency psychologist Leizer found that Smallwood had no limitations due to psychiatric factors. (R. at 134, 138.) On May 14, 2002, Kleinot diagnosed personality disorder, not otherwise specified, with borderline and possibly antisocial features and dysthymic disorder. (R. at 146.) He opined that Smallwood had a seriously limited, but not precluded, ability to understand, remember and carry out complex instructions. (R. at at 147-48.) He found that Smallwood had a satisfactory to a more than satisfactory ability in all other areas. (R. at 147-48.) On May 28, 2002, Dr. Robinson diagnosed a pain disorder, minor depression resulting from the pain disorder with insomnia and irritability and marijuana abuse. (R. at 209.) Dr. Robinson assessed a then-current GAF score of 80, indicating no more than a slight impairment in social, occupational or school functioning. (R. at 209.) In June 2002, Dr. Robinson assessed a then-current GAF score of 70, indicating mild symptoms in social, occupational or school functioning. (R. at 189.) In August 2002, Smallwood denied symptoms of depression and anxiety. (R. at 202-03.) Dr. Miglani reported that Smallwood's concentration and attention were intact, and his memory was normal for immediate, recent and remote recall. (R. at 203.)

In October 2005, Smallwood presented to the emergency room with complaints of depression, anxiety and suicidal thoughts. (R. at 512-18.) He attributed these feelings to his wife recently leaving him. (R. at 516, 523.) On May 12, 2006, Smallwood reported to Dr. Smith that he got along "fine" with others. (R. at 438.) Dr. Smith reported that Smallwood's recent, remote and long term memory was generally intact. (R. at 438.) His abstraction skills were operationally intact, as were his motor, concentration and processing skills. (R. at 438.) Dr. Smith diagnosed cannabis dependence and assessed a then-current GAF score of 65, indicating mild symptoms in social, occupational and school functioning. (R. at 439.) Dr. Smith noted that any symptoms associated with depression or anxiety likely were the result of drug use and likely were exacerbated by reported alcohol and cocaine abuse. (R. at 439.)

The ALJ noted that Smallwood's work history and the absence of evidence that his ability to work was seriously impaired by his intellectual functioning indicated at least the ability to maintain attention and concentration on short, simple work tasks consistent with unskilled work. (R. at 384.) The ALJ also noted that Hughson relied on Smallwood's subjective reports of pain in making her diagnosis of a pain disorder. (R. at 381.) Other than Dr. Robinson, none of the other health providers diagnosed a pain disorder. The record shows Smallwood's concentration and memory were intact. He admitted that his symptoms of anxiety and depression were relieved with Xanax. (R. at 208.) "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Based on the above, I find that substantial evidence exists in the record to support the ALJ's mental residual functional capacity finding.

# PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. Substantial evidence exists to support the ALJ's finding with regard to Smallwood's mental residual functional capacity; and

2. Substantial evidence exists to support the ALJ's finding that Smallwood was not disabled under the Act.

# RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Smallwood's motion for summary judgment, grant the Commissioner's motion for summary judgment and affirm the final decision of the Commissioner denying benefits.

# Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2010):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to

which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 18th day of August 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE